UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEAT AND FROST INSULATORS OF NORTHERN CALIFORNIA LOCAL UNION NO. 16 HEALTH AND WELFARE TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RHODIUM INTEGRATED SERVICES, <br><br> Defendant. | Case No. 21-cv-04084-RS <br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

## I. INTRODUCTION

Plaintiffs move for default judgment against Defendant Rhodium Integrated Services in this action brought under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs seek an award of outstanding employer contributions, liquidated damages, interest, attorneys' fees and costs, and an injunction requiring Rhodium to comply with the audit of payroll records according to the terms of their Bargaining and Trust Agreements. For the reasons further set forth below, the motion is granted.

## II. BACKGROUND[1]

Plaintiffs filed this action claiming Rhodium violated terms of their Bargaining and Trust Agreements by failing to (1) comply with an audit of their payroll records from August 1, 2019 to

---

[1] Unless otherwise noted, this background is based on the factual allegations in the complaint which, upon default, are taken as true except for the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987).

the present, (2) pay contribution balances, liquidated damages, and interest for hours worked by its employees from March 2020 through September 2020, (3) timely pay fringe benefit contributions from November 2019 through February 2020, and (4) report and pay contributions for hours worked by employees from October 2020 through April 2021. Also, Plaintiffs assert entitlement to recovery of all other contributions, liquidated damages, and interest on delinquent contributions, further audit, or contributions for any months Rhodium failed to report to Plaintiffs.

On June 15, 2021, the Complaint and summons were personally served on Rhodium's registered agent, Gregorio Ramirez, for service of process. After Rhodium failed to answer or otherwise respond to the complaint within 21 days, the Clerk of Court entered default against Rhodium pursuant to Federal Rule of Civil Procedure 55(a) on July 29, 2021. Rhodium received a copy of the Clerk's notice of entry of default, and Plaintiffs now move for default judgment on all their claims. In support of their motion, Plaintiffs have submitted declarations from their Counsel, Auditor, and Fringe Benefit Director, confirming the factual allegations made in the Complaint and the motion. On December 1, 2021, Rhodium was properly served the motion.

### III. LEGAL STANDARD

Following entry of default, the district court has discretion on whether to enter default judgment. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the Court may consider: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Once the question of entry of default judgment is decided, the Court must determine whether the relief requested by Plaintiffs is appropriate. ERISA § 1132(g) provides for statutory damages where a multi-employer plan successfully sues under 29 U.S.C. § 1145: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or

under the terms of a collective bargaining agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." A plan that obtains judgment in its favor in an action for unpaid contributions under § 1145 is entitled to the unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

The Ninth Circuit has held that when presented with a request for attorneys' fees and costs, a five factor test informs whether they should be awarded. *Hummell v. S. E. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir. 1980). The factors are: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Id*.

After the court determines that there are no special circumstances that warrant the denial of attorneys' fees, it must assess whether the requested fees are reasonable by calculating the "lodestar." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The Ninth Circuit calculates the lodestar by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d 1258, 1262. Also, the court may adjust the award from the lodestar figure based on additional factors that bear on reasonableness. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975). Beyond attorneys' fees, the Ninth Circuit has also held that a court can award reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client. *Trustees of the Const. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006).

Furthermore, a plaintiff seeking a permanent injunction must establish (1) success on the merits; (2) likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) that an injunction is in the public interest. *Winter v.*

*NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## IV. DISCUSSION

### A.  Request for Entry of Default Judgment

When entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber, Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. Jun. 17, 2008). Here, there is proof of proper service, which was filed with the Court on June 22, 2021. The service of process is sufficient as Defendant was duly served with the Complaint and summons and was provided adequate notice of the claims, to which it chose not to reply.

The *Eitel* factors support default judgment. First, Plaintiffs would be prejudiced by the denial of their motion as they would be left without a remedy if default judgment is not entered in their favor. The second and third *Eitel* factors also favor Plaintiffs: the Complaint is sufficient, and the claims appear to be meritorious. Once a default has been entered, the facts in the Complaint, except those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see also TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Plaintiffs brought their claims under ERISA, which provides that a trustee can bring a civil enforcement action to recover unpaid contributions from an employer who must make such contributions under a collective bargaining agreement. *See* 29 U.S.C. §§ 1002(14), 1132(a)(3), 1145. In the Complaint, Plaintiffs allege Rhodium entered into a bargaining agreement and was therefore required to contribute to the respective Trust Funds for benefits based on the number of hours worked by its employees. Plaintiffs also aver Rhodium failed to pay contributions as required by such agreement. These allegations constitute a valid claim under ERISA.

The fourth *Eitel* factor "assesses the reasonableness of the potential award if a default judgment is entered." *KKMI Sausalito, LLC v. Vessel "Self Inflicted"*, 428 F. Supp. 3d 200, 208 (N.D. Cal. 2019). Reasonableness here requires considering the "amount of money at stake in relation to the seriousness of [d]efendant's conduct." *Brightpoint Distribution, LLC v. AliphCom*, 2017 WL 7310780, at 4 (N.D. Cal. Dec. 4, 2017) (internal quotation marks omitted). Here, Plaintiffs request $37,785.31 for all damages, interests, fees, and costs (in addition to an injunction

and costs incurred for this motion). Plaintiffs provided well-supported declarations to establish the amount owed by Rhodium. Because the sum of the money at issue is properly documented, contractually justified, and reasonably proportionate to the harm caused by Rhodium's alleged actions, this factor favors Plaintiffs.

The fifth *Eitel* factor directs courts to consider the likelihood of a dispute between the parties concerning material facts (despite the facts about liability in the Complaint being deemed admitted after a default, *TeleVideo Sys., Inc.*, 826 F.2d at 917–18). Plaintiffs provided a clear, itemized breakdown of outstanding payments, amounts that directly reflect the terms of the respective agreements. There is little indication Rhodium could dispute the facts presented. However, as Rhodium has not appeared, this cannot be definitively determined. Therefore, this factor is more or less neutral, weighing only very slightly in favor of default judgment.

The sixth *Eitel* factor examines whether Defendant's default was due to excusable neglect. Plaintiffs have presented evidence that the summons and complaint were properly served on Rhodium. Yet despite ample time and opportunity, Rhodium did not respond or answer. While there is a possibility Rhodium might appear and claim neglect, when the defendant was properly served with the Complaint, the notice of entry of default, and the papers in support of the motion for entry of default judgment, the likelihood of neglect is low. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). There is nothing in the record pointing to excusable neglect as the reason for Defendant's failure to appear and litigate this matter. Thus, this factor supports entry of default judgment.

The last *Eitel* factor considers whether the policy of deciding a case based on the merits precludes entry of default judgment. While cases should be decided based on its merits whenever reasonably possible, this policy is not absolute. *See, e.g.*, *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, because Defendant has failed to respond, deciding the case upon its merits seems impossible. Therefore, default judgment is not precluded. Since the factors overwhelmingly favor Plaintiffs' motion for default judgment, it is appropriate to grant default judgment.

**B. Principal Contributions, Interest, & Liquidated Damages**

Plaintiffs seek $33,064.85 for principal contributions, liquidated damages, and interest. When judgment is entered on the relevant sections of ERISA, Plaintiffs must be awarded these damages and costs. *Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984); *see also Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008) (interest on late-paid contributions are mandatory as well, citing *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical Contractors, Inc*, 875 F.2d 212 (9th Cir. 1989)). Here, the amounts at issue are supported by the Declarations of Sandra Snyder, Rachell Hislop, and Ana P. Hallmon with their exhibits, as evidence supporting Plaintiffs' request for unpaid contributions, interest, and liquidated damages. Collectively, the Declarations provide a comprehensive record detailing the agreements, the outstanding total amounts, and repeated communications to Rhodium. Rhodium agreed to pay both interest and liquidated damages on delinquent contributions, and ERISA entitles Plaintiffs to both interest and liquidated damages. 29 U.S.C. §§ 1132(g)(2), 1145; *see also Northwest Adm'rs, Inc. v. AD Auto. Distributors Inc.*, 2006 WL 1626940, at *5 (N.D. Cal. Jun. 12, 2006). Thus, Plaintiffs are awarded the amounts they seek.

**C. Awarding Attorneys' Fees & Costs**

Plaintiffs further request an award for $4,720.46 of attorneys' fees and costs incurred as a result of the Complaint and instant motion. § 1132(g) authorizes attorneys' fees under ERISA, but they still must be reasonable. *Kemmis v. McGoldrick*, 706 F.2d 993, 997–98 (9th Cir. 1983). The *Hummell* factors establish the fees sought are reasonable. The first *Hummell* factor—relative culpability or bad faith—supports Plaintiffs because they make out a seemingly-meritorious case that Rhodium is culpable. As noted above, the facts in the Complaint are taken as true after default, except regarding damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Rhodium violated its agreements with Plaintiffs and failed to respond to multiple requests to submit payroll records for audit. Thus, it seems Rhodium breached its statutory and contractual obligations. *See Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1248. By contrast, there is no evidence of any wrongdoing on Plaintiffs' part. The outcome of the second *Hummell* factor—ability to pay—is unclear because

there is no evidence on this point.

In applying the third *Hummell* factor, deterrence, courts acknowledge that awarding attorneys' fees and costs deters violations of ERISA. *See Caplan*, 573 F. Supp. 2d at 1248. Thus, this factor supports awarding the Plaintiffs its attorneys' fees and costs. The fourth factor of the *Hummell* test also weighs in favor of Plaintiffs because the recovery of costs and fees is necessary to prevent harm to Plaintiffs. Plaintiffs argue they were "required to pay attorneys' fees and costs to enforce the employer's obligations to comply with requests for inspection of documents, an audit." Mot, Dkt. No. 19, at 17. The fourth factor also supports Plaintiffs because they seek relief to repair the harm caused by Rhodium for the benefit of all plan participants.

Finally, the fifth *Hummell* factor is not fully applicable as the merits will not be decided. However, as discussed above, Plaintiffs present solid grounds for their claims, so this factor is basically neutral, perhaps slightly favoring Plaintiffs. In sum, the *Hummell* factors weigh in favor of awarding attorneys' fees and costs.

**D. Reasonableness of Attorney's Fees & Costs**

Of the fees and costs, $4,170 is for fees and $550.46 is for costs. As to the fees, the reasonableness of the hourly billing rate and number of hours billed must be examined. First, Plaintiffs' counsel in this action charged the following hourly billing rates: $250 for the shareholder attorney, $245 for an associate attorney, and $145 for a paralegal. The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. Plaintiffs assert that their hourly rates are "significantly lower than those charged in the area." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); Mot. at 18. An hourly rate of $650 for lead counsel and $190 for senior paralegals has been found to be reasonable for Bay Area ERISA specialists. *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2021 WL 242924, at *8 (N.D. Cal. Jan. 15, 2021); *see also Echague v. Metro Life Ins. Co.*, 69 F. Supp. 3d 990, 996–97 (N.D. Cal. 2014) (finding $650 for lead counsel, $250 for associates, and $135 for paralegals was reasonable for ERISA legal professionals in the Bay Area). Here, the billing rates of Plaintiffs' attorneys and paralegals fall below or are comparable to rates that other courts have found to be reasonable for ERISA work in this area. Therefore, the rates charged by Plaintiffs' attorneys are

reasonable.

Second, Plaintiffs spent 22.5 hours on this matter, most of which was paralegal time. This amount is support by the detailed billing records attached to the Declaration of Ana P. Hallmon. The attorneys have spent just over a day on this case, and the paralegal less than two days. That is a reasonable amount of time for an ERISA matter.

Additionally, Plaintiffs request costs of $550.46 for the Complaint filing fee and service of process for the Complaint, summons, notice of default, and motion. As such costs are considered reasonable litigation expenses, Plaintiffs are entitled to the requested amount. Thus, all of the requested attorneys' fees and costs are granted.

**E. Injunctive Relief**

Plaintiffs also seek an injunction compelling Rhodium to submit certain documents required to complete an audit of its payroll records. Plaintiffs are specifically granted the right to these types of audits under ERISA. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985). While the first *Winter* factor does not apply neatly in the context of a default judgment, Plaintiffs have laid out concrete arguments for their claims, and Rhodium is deemed to have admitted the facts regarding culpability. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Plaintiffs have presented a prima facie case, and although the merits will not be decided here, at the least it does not counsel strongly against granting an injunction.

Plaintiffs satisfy the second *Winter* factor since they persuasively assert how, in the absence of injunctive relief, they will continue to suffer harm from Rhodium's ongoing violation. Without the audit they will continue to suffer being deprived of their rights under ERISA, and potentially future harms going undiscovered. The third *Winter* factor is also met because Rhodium does not suffer a hardship merely by being required to comply with applicable contract and statutory obligations. Finally, Plaintiffs satisfy the fourth *Winter* factor because the public interest is well-served by holding employers responsible to their commitments and protecting ERISA fiduciaries. Considering the *Winter* factors together, Plaintiffs are entitled to injunctive relief.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment and attorneys' fees and costs is granted.

**IT IS SO ORDERED**.

Dated: January 26, 2022

_____
RICHARD SEEBORG
Chief United States District Judge